**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 19-80030-CR-DIMITROULEAS/MATTHEWMAN

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

v.

**AARON SINGERMAN,**

      **Defendant.**
_____/

**DEFENDANT AARON SINGERMAN'S RESPONSE**
**<u>TO GOVERNMENT'S SENTENCING MEMORANDUM</u>**

In an attempt to convince this Court to impose a sentence far in excess of any prior prosecution for anabolic steroids peddled as dietary supplements, the government cites three cases in its sentencing memorandum: *United States v. Kestel*, *United States v. Root*, and *United States v. Lambert*. (Doc. 652-Pg. 8.) None of those cases is comparable to Mr. Singerman's. The government entirely fails to highlight significant and aggravating differences between those three cases and this one. The idea that defendants like Mr. Singerman "are regularly incarcerated for lengthy terms" (Doc. 652-Pg. 8) is simply false.

All three of the government's cases involve entirely black-market sales of blatantly illegal steroids. These were not – as is the case here – companies or individuals operating in the open market, listing their ingredients on labels sold openly to consumers, and attempting to evade FDA enforcement through aggressive interpretation of an evolving regulatory landscape. The government's cases involve underground laboratories selling unquestionably illegal products, without any attempt at legal pretense, using all the hallmarks of the illegal drug trade to hide their activities.

In *United States v. Kestel*, the defendant used aliases, a private Facebook group, password-protected websites, encrypted messaging applications, fraudulent bank accounts, and digital payment applications such as Coinbase to sell homemade anabolic steroids and a wide variety of prescription drugs out of his basement laboratory. *See United States v. Kestel*, No. 1:19-CR-244 (E.D. Va.), Doc. 41 (Gov't Sentencing Memorandum.) He disguised the sale of those drugs by telling his customers to conduct financial transactions with innocuous descriptions such as "the purchase of aquatic supplies." He stole and used personally identifiable information of acquaintances and opened bank accounts in their names as part of an elaborate money laundering scheme. Kestel – a prior convicted felon – even traded his steroids for an AR-15 assault-style rifle and created false sales documents that disguised his illegal acquisition of it. Kestel's guideline range was 87 to 108 months' imprisonment, even with acceptance of responsibility (*id*. at 5). The Court varied downward – at the government's suggestion, even under all those aggravating circumstances – to a below-Guidelines sentence of 70 months.

In *United States v. Root*, the defendant was the leader of the country's largest underground lab manufacturing and distributing injectable steroids, busted by the Drug Enforcement Agency in Operation Cyber Juice. That operation was a nationwide takedown in 2015 of the underground trade of anabolic steroids, and particularly injectable steroids, that had been banned since 1990.[1] Root pressured and coerced his co-conspirators to use their friends and family members to wire money to China for raw components for the steroids distributed illegally by the group, exposing each of those innocent bystanders to decades in prison for money laundering. *See United States v. Root,* No. 3:15-CR-261 (N.D.N.Y.), Doc. 248 (Gov't Sentencing Memorandum). Critically for the court sentencing Mr. Root, he was a recidivist. Mr. Root had "in the past engaged in conduct that was similar to the conduct for which you're convicted and stand before the Court today and that you

---

[1] *See* "DEA Announces Major Steroid Operation," https://www.dea.gov/press-releases/2015/09/01/dea-announces-major-steroid-operation; *see also* "Founder of Operation Cyber Juice's Biggest UGL Has Been Sentenced," https://www.steroidal.com/steroids-news/founder-operation-cyber-juices-biggest-ugl-sentenced/.

were punished for but it didn't do any good.  You went right back to doing the same thing again which gives the Court great pause as to what the future holds for you." *See United States v. Root,* No. 3:15-CR-261 (N.D.N.Y.), Doc. 308 (Sentencing Transcript), at 17.  Root received 78 months' imprisonment, the low end of his guideline range even with acceptance of responsibility.

*Lambert* is perhaps the most egregiously out-of-place comparator case of the three cited by the government.  Lambert and his wife manufactured and distributed pill-form and injectable steroids through various underground internet forums, concealing their activities by using false names, encrypted messaging, and cryptocurrency accounts.  Lambert was arrested and sentenced for selling steroids in 2019, but instead of surrendering to serve that sentence, he assumed a new identity, moved to a different state, and resumed his illegal operations.  He illegally possessed weapons (as a convicted felon) and – with a co-conspirator – manufactured silencers for them.[2]  After all that, Lambert was sentenced to 108 months' imprisonment.

These three cases apparently are the best the government can do to suggest that a multi-year sentence of imprisonment for Mr. Singerman is not unwarrantedly disparate from the way it and the courts have treated these cases across the country for the last decade.  All three of the government's examples involve much different, and more serious conduct, than is at issue here:  black-market drug dealing, by recidivist drug dealers, some armed with illegal weapons or involving the trade of such weapons, hiding their blatantly illegal operations through encryption and sophisticated money laundering, and coercing and pressuring innocents into criminal activity.

Though the government seeks flatly to deny it (Doc. 652-Pg. 8), there is actually a set of cases that involve similar conduct as here:  the more than a dozen cases detailed in Mr. Singerman's own memorandum.  None of those cases justified a sentence close to what the government here is requesting against Mr. Singerman, no

---

[2]   *See* "Ringleader and Members of Multi-State Anabolic Steroid Trafficking Network Sentenced," https://www.dea.gov/press-releases/2021/11/02/ringleader-and-members-multi-state-anabolic-steroid-trafficking-network.

3

sentencing purpose is served by such a sentence.  For all the reasons argued in Mr. Singerman's memorandum, his circumstances call for a more measured punishment.

Respectfully submitted, this 26th day of January, 2022.

         **GRIFFIN DURHAM TANNER**
         **& CLARKSON LLC**

       By:  */s/ R. Brian Tanner*
         James D. Durham (*admitted pro hac vice*)
         Georgia Bar No. 235515
         jdurham@griffindurham.com
         R. Brian Tanner (*admitted pro hac vice*)
         Georgia Bar No. 697615
         btanner@griffindurham.com
         7 East Congress Street, Suite 703
         Savannah, GA 31401
         P/F: 912-867-9140

         **OLIVER MANER LLP**
         William J. Hunter (*admitted pro hac vice*)
         Georgia Bar No. 141288
         bhunter@olivermaner.com
         218 West State Street
         P.O. Box 10186
         Savannah, GA 31412
         P: 912-236-3311
         F: 912-236-8725

         **MORSE & MORSE, LLC**
         Amy Morse
         Of Counsel to Richard G. Lubin, P.A.
         FL Bar No.: 0388475
         amy@morselegal.com
         707 North Flagler Drive
         West Palm Beach, FL 33401
         P: 561-651-4145
         F: 561-655-2182

         **RICHARD G. LUBIN, P.A.**
         Richard G. Lubin
         Florida Bar No. 182249
         rich@lubinlaw.com
         707 North Flagler Drive

West Palm Beach, FL  33401<br>
P: 561-655-2040<br>
F: 561-655-2182

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2022, I electronically filed the foregoing document with the Clerk of Court, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

_____